CRAWFORD v. OSU MEDICAL TRUST

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:CRAWFORD v. OSU MEDICAL TRUST

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

CRAWFORD v. OSU MEDICAL TRUST2022 OK 25Case Number: 117870Decided: 03/22/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 25, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

MIRANDA and COLBY CRAWFORD, Natural Parents and on Behalf of C.C.C., a Minor, and MIRANDA and COLBY CRAWFORD, Individually, Plaintiffs/Petitioners,
v.
OSU MEDICAL TRUST, a Public Trust d/b/a OSU Medical Center, Defendant/Respondent,
and
SAINT FRANCIS HOSPITAL, INC., an Oklahoma Corporation, d/b/a St. Francis Children's Hospital, PEDIATRIC OPHTHALMOLOGY, P.C., an Oklahoma Professional Corporation, d/b/a Pediatric Eye Associates and Family Eye Care, and SCOTT S. SADEGHI, D.O., Defendants

APPEAL FROM A CERTIFIED INTERLOCUTORY ORDER
OF THE DISTRICT COURT OF TULSA COUNTY,
STATE OF OKLAHOMA
HONORABLE REBECCA NIGHTINGALE, DISTRICT JUDGE

¶0 Dr. Sawyer Hall treated C.C.C. in the emergency room at Saint Francis Hospital on June 16, 2017. C.C.C.'s eye was removed on June 21, 2017. Plaintiffs/Appellants Miranda and Colby Crawford, Natural Parents and on Behalf of C.C.C., a Minor, and Miranda and Colby Crawford, Individually (collectively, the Crawfords) initially filed this medical malpractice lawsuit against Defendant Saint Francis Hospital, Inc. on February 2, 2018. The Crawfords sought to hold Saint Francis liable for damages resulting from Dr. Hall's alleged misdiagnosis. In February 2018, the Crawfords learned that Dr. Hall was actually an intern or resident physician and employee of Defendant/Respondent OSU Medical Trust, doing business as OSU Medical Center (OSUMC), and not an employee of Saint Francis. The parties agree OSUMC is a public trust and subject to the Governmental Tort Claims Act (GTCA), 51 O.S. §§ 151-172. The Crawfords gave notice of their tort claim to OSUMC on August 22, 2018. The trial court granted OSUMC's motion to dismiss for failure to present notice of the claim within one year of the date the loss occurred, pursuant to 51 O.S.Supp.2012 § 156(B). The Crawfords appealed from a certified interlocutory order, and this Court previously granted certiorari. The Crawfords argue that the discovery rule applies and tolls the one-year notice period until they learned Dr. Hall was an employee of OSUMC. We hold: (1) the discovery rule applies to the commencement of the one-year notice period when a medical negligence claim is subject to the GTCA; (2) the discovery rule does not, however, operate to toll the one-year notice period until the Crawfords discovered Dr. Hall was an employee of OSUMC; (3) the tolling provision in 51 O.S.Supp.2012 § 156(E) does not apply to incapacitation due to minority; and (4) when the GTCA controls, the limitations in 12 O.S.2011 § 96 do not apply to the time limits for presenting notice of the claim. Notice was untimely and, as a result, the Crawfords' claims against OSUMC are forever barred. We affirm the trial court's order dismissing OSUMC for lack of jurisdiction.

CERTIORARI PREVIOUSLY GRANTED;
ORDER OF DISTRICT COURT IS AFFIRMED;
REMANDED FOR FURTHER PROCEEDINGS.

Paul T. Boudreaux, Richardson Richardson Boudreaux, Tulsa, Oklahoma, for Petitioners.

Leslie C. Weeks, Brandon C. Whitworth, Rodolf & Todd, Tulsa, Oklahoma, for Respondent OSU Medical Trust, a Public Trust.

KANE, V.C.J.:

¶1 We granted certiorari to review a certified interlocutory order dismissing Defendant/Respondent OSU Medical Trust, doing business as OSU Medical Center (OSUMC), from this medical malpractice lawsuit. The issue is whether Plaintiffs/Appellants Miranda and Colby Crawford, Natural Parents and on Behalf of C.C.C., a Minor, and Miranda and Colby Crawford, Individually (collectively, the Crawfords) complied with the notice provisions of the Governmental Tort Claims Act (GTCA), 51 O.S. §§ 151-172. We hold that the Crawfords failed to present notice of their tort claim within one year of the date the loss occurred and, pursuant to 51 O.S.Supp.2012 § 156(B), their claims against OSUMC are forever barred. We affirm the trial court's order dismissing OSUMC with prejudice.

I. FACTS AND PROCEDURAL HISTORY

¶2 On June 16, 2017, C.C.C., a minor child, was taken to Defendant Saint Francis Hospital, Inc.'s emergency room due to problems with his eye. There, C.C.C. was seen by Dr. Sawyer Hall. The Crawfords allege that Dr. Hall's misdiagnosis resulted in C.C.C.'s eye being removed on June 21, 2017.

¶3 The Crawfords initially filed this lawsuit against Saint Francis on February 2, 2018. At the time of filing, the Crawfords believed Dr. Hall was an employee of Saint Francis and alleged that Saint Francis was liable for the negligence of its agents and representatives, which resulted in the enucleation of C.C.C.'s eye. Sometime later in February 2018, the Crawfords learned or discovered that Dr. Hall was actually an intern or resident physician and an employee of OSUMC and not an employee of Saint Francis. The parties agree OSUMC is a public trust and subject to the GTCA. The Crawfords gave notice of their tort claim to OSUMC on August 22, 2018. On December 12, 2018, OSUMC denied the claim based on failure to give notice of the claim within one year of the date of loss, as required by the GTCA. The Crawfords amended their petition to add OSUMC as a defendant. In their Third Amended Petition, the Crawfords claimed that the acts and omissions of OSUMC's agents, employees, representatives, interns and residents caused damages, including the enucleation of C.C.C.'s eye. The Crawfords also explained that they had "accumulated their child's medical records and secured the services of an expert to advise them concerning any breaches of the National Standards of Care. Thereafter, Plaintiffs learned in approximately February of 2018, that the Defendants breached the National Standards of Care."

¶4 OSUMC entered a special appearance and filed a motion to dismiss for lack of jurisdiction based on failure to comply with the notice provisions of the GTCA and for failure to state a claim. OSUMC argued that the Crawfords did not present their notice of tort claim within one year after the date of loss, as required by 51 O.S. § 156(B). Notice was given on August 22, 2018, which was one year and two months after Dr. Hall treated C.C.C. and the eye was removed. The Crawfords responded that the discovery rule tolled the one-year notice period. The Crawfords asserted that they did not learn of OSUMC's malpractice until all the medical records were collected and reviewed. The earliest they knew or could have known of OSUMC's breach of the national standards of care, which resulted in C.C.C.'s injury, was approximately February of 2018 "when their counsel conferred with and secured the opinion of an expert" and, therefore, they had until February 2019 to give notice of the tort claim to OSUMC. The trial court granted OSUMC's motion to dismiss for failure to comply with the one-year notice requirement in the GTCA. The trial court certified the order for interlocutory review pursuant to 12 O.S.2011 § 952(b)(3). We previously granted certiorari.

II. STANDARD OF REVIEW

¶5 A dismissal for lack of subject matter jurisdiction is reviewed de novo. See Video Gaming Techs., Inc. v. Tulsa Cty. Bd. of Tax Roll Corr., 2019 OK 84, ¶ 2, 455 P.3d 918, 919. The notice required by 51 O.S. § 156(B) is considered a mandatory prerequisite and jurisdictional requirement to filing a tort claim in district court. See Hall v. GEO Grp., Inc., 2014 OK 22, ¶¶ 1, 19, 324 P.3d 399, 400, 406. The Crawfords contend the trial court erred by not applying the discovery rule1 to toll the one-year notice period in 51 O.S.Supp.2012 § 156(B) of the GTCA. This proposition of error presents a question of law, which we review de novo. See Grisham v. City of Oklahoma City, 2017 OK 69, ¶ 4, 404 P.3d 843, 846. Whether 51 O.S.Supp.2012 § 156(E) tolls the notice period due to minority and whether 12 O.S.2011 § 96 applies to a GTCA claim both present issues of statutory interpretation. Issues of statutory interpretation also present questions of law and are reviewed de novo. See Fanning v. Brown, 2004 OK 7, ¶ 8, 85 P.3d 841, 845. Appellate courts have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal rulings. Id.

III. ANALYSIS

A. If the Discovery Rule Applies to the Underlying Tort, It Applies to the Commencement of the One-Year Notice Period in the GTCA

¶6 The parties agree OSUMC is a public trust and that the Crawfords' claims are subject to the requirements of the GTCA.2 "The GTCA is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for its negligence." Smith v. City of Stillwater, 2014 OK 42, ¶ 14, 328 P.3d 1192, 1198. The GTCA narrowly structures the method and timeframe for bringing a tort claim against the State or a political subdivision. See Watkins v. Cent. State Griffin Mem'l Hosp., 2016 OK 71, ¶ 21, 377 P.3d 124, 130 (citing 51 O.S.2011 § 156). Section 156(B) of the GTCA provides, in pertinent part:

[C]laims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs.

51 O.S.Supp.2012 § 156(B). "The [GTCA] requires, without exception, that the plaintiff give notice and commence an action [in the district court] within the prescribed statutory time limits." Jarvis v. City of Stillwater, 1987 OK 5, ¶ 5, 732 P.2d 470, 473.

¶7 Generally, a cause of action accrues, and the applicable statute of limitations begins to run, when the injury occurs. See Calvert v. Swinford, 2016 OK 100, ¶ 11, 382 P.3d 1028, 1033. The common law discovery rule tolls the limitations period until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury. See id.; Woods v. Prestwick House, Inc., 2011 OK 9, ¶¶ 24-25, 247 P.3d 1183, 1189-90. Whether the discovery rule applies to the statutory time limits in the GTCA depends on the underlying tort. The discovery rule only applies in certain tort cases. See Calvert, 2016 OK 100, ¶ 11, 382 P.3d at 1033. If the discovery rule applies to the underlying tort in a non-GTCA case, it applies to the commencement of the one-year notice period when that tort claim is subject to the GTCA.

¶8 The discovery rule applies to medical negligence claims that are not subject to the requirements of the GTCA. See 76 O.S.2011 § 18; Wing v. Lorton, 2011 OK 42, 261 P.3d 1122 (applying 76 O.S. § 18); Seitz v. Jones, 1961 OK 283, 370 P.2d 300 (applying the common law discovery rule). Thus, we hold the discovery rule applies to the commencement of the one-year notice period when a medical negligence claim is subject to the GTCA.3

 

B. The Discovery Rule Does Not Toll Commencement of the One-Year Notice Period Until the Crawfords Learned the Tortfeasor was an Employee of the State or a Political Subdivision

 

¶9 The Crawfords argue the discovery rule should apply because they did not learn Dr. Hall was an employee of an entity subject to the GTCA until February 2018. The Crawfords explain:

Plaintiffs, through counsel, did not discover the malpractice by Defendant, OSU, until all the medical records of C.C.C. were collected and reviewed. C.C.C.'s misdiagnosis occurred at Saint Francis Children's Hospital, and Plaintiffs did not have reason to know and did not know that a physician who was involved in malpractice worked for OSU rather than Saint Francis Hospital, Inc., where the malpractice occurred. The earliest that Plaintiffs knew or could have known through reasonable diligence that the individual involved in the malpractice that resulted in C.C.C.'s damages was employed by Defendant, OSU, and not Saint Francis, was approximately February 2018, when counsel conferred with and secured the opinion of an expert after providing the expert with all pertinent medical records.

Appellant's Brief-in-Chief, p. 7. The Crawfords argue that because the discovery rule tolled the one-year notice period, they had until February 2019 to give OSUMC notice of their claim and, therefore, the notice provided on August 22, 2018 was timely. They rely on two Court of Civil Appeals cases, Bentley v. Kirk, 2015 OK CIV APP 43, 348 P.3d 1112, and Lavender v. Craig General Hospital, 2013 OK CIV APP 80, 308 P.3d 1071, to support their argument. Bentley and Lavender do not support the extension of the discovery rule that the Crawfords desire. While both cases involved medical malpractice claims and GTCA-entities given notice outside the one-year limitation, neither opinion addresses the issue presented in this case: whether the discovery rule tolls the one-year notice period until the plaintiffs discover the physician was employed by an entity subject to the GTCA.

¶10 The Crawfords assert they did not know nor should they have known, through the exercise of reasonable diligence, that Dr. Hall was an OSUMC intern or resident, and not an employee of Saint Francis, until their counsel conferred with an expert. Even assuming their assertions are true, as we must, that is not the type of discoverable information contemplated by the rule. The discovery rule pertains to the plaintiff discovering "sufficient information to be aware of the claims," Watkins, 2016 OK 71, ¶ 30, 377 P.3d at 132, and "sufficient facts to state a cause of action." Woods, 2011 OK 9, ¶ 3, 247 P.3d at 1186. Medical negligence, like all negligence claims, contains three elements: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a failure to properly exercise or perform that duty; and (3) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care. See Robinson v. Okla. Nephrology Assocs., Inc., 2007 OK 2, ¶ 9, 154 P.3d 1250, 1253-54. The discovery rule applies to the statutory time limit for giving notice under the GTCA much like it applies to the statute of limitations for a non-GTCA medical negligence claim.4 For general medical malpractice cases, this Court has said the pertinent inquiries in a discovery rule analysis are when the plaintiff acquired sufficient information that she knew or should have known of (1) the injury itself; and (2) the wrongfulness and cause of the injury. See Wing, 2011 OK 42, ¶¶ 14, 19, 261 P.3d at 1126-28.

¶11 The Crawfords are not claiming they did not discover the injury itself until February 2018. The injury alleged is the loss of the eye. It is undisputed the Crawfords knew about the injury itself when C.C.C.'s eye was removed on June 21, 2017. This Court has said the discovery rule applies when the injury manifests after the wrongful act or omission responsible for the medical negligence action. See id. ¶ 13, at 1126. That is not the situation in this case. The injury manifested just five days after Dr. Hall's alleged wrongful act or omission. The purpose of the discovery rule "is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury." Woods, 2011 OK 9, ¶ 24, 247 P.3d at 1190. In this case, the injury itself was ascertainable when C.C.C.'s eye was removed.

¶12 The Crawfords are not claiming they did not discover the wrongfulness and cause of the injury until February 2018. The Crawfords allege the wrongfulness and cause of the injury was the misdiagnosis provided by Dr. Hall on June 16, 2017. The Crawfords are not claiming they did not discover that Dr. Hall's misdiagnosis caused C.C.C.'s injuries until February 2018. In fact, on February 2, 2018, the Crawfords filed a lawsuit against Saint Francis based on Dr. Hall's alleged misdiagnosis--the same medical negligence upon which their claims against OSUMC are based.

¶13 Rather, the Crawfords claim they did not know the identity of Dr. Hall's employer until February 2018. The discovery rule does not apply in this case as a matter of law. The one-year notice period began when C.C.C. lost his eye on June 21, 2017. At that point in time, the Crawfords had sufficient information to state a cause of action for medical negligence based on Dr. Hall's alleged misdiagnosis. The Crawfords did not need to know the identity of the tortfeasor's employer to state a cause of action.5 When a plaintiff is injured and their medical negligence claim accrues, they may not know whether the individual, who allegedly committed malpractice, is an employee of the state or a political subdivision. After the Crawfords had sufficient information to be aware of their claims, it became their duty to investigate the claims and explore theories of liability, including vicarious liability, respondeat superior, individual liability, and whether their claims were subject to the GTCA.6 The Crawfords had one year from the date C.C.C.'s eye was removed to determine if Dr. Hall was an employee of the state or a political subdivision and, if so, present notice of their claim. The Crawfords, admittedly, assumed Dr. Hall was an employee of Saint Francis because he treated C.C.C. at a Saint Francis facility. It was not until after the suit was initially filed and the Crawfords' counsel, as part of their litigation strategy, consulted an expert in February 2018 that they learned Dr. Hall was an employee of OSUMC.7 The GTCA's one-year notice period expired on June 21, 2018. The Crawfords did not present notice of their claim until August 22, 2018.

C. Title 51, § 156(E) Does Not Toll the Notice Period When the Injured Person is Incapacitated Due to Minority

¶14 On appeal, the Crawfords assert that 51 O.S. § 156(E) also tolls the one-year notice period.8 Section 156(E) of the GTCA tolls the notice period while the injured person is incapacitated: "The time for giving written notice of claim pursuant to the provisions of this section does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity." 51 O.S.Supp.2012 § 156(E). The Crawfords argue that § 156(E) applies to C.C.C.'s inability, due to incapacitation as a minor, to give notice.

¶15 We disagree. The plain and unambiguous language of the statute provides that the one-year notice period is tolled 90 days only if "the person injured is unable due to incapacitation from the injury to give such notice . . . ." 51 O.S. § 156(E) (emphasis added); see also Johns v. Wynnewood Sch. Bd. of Ed., 1982 OK 101, ¶ 6, 656 P.2d 248, 250 ("The time for giving notice excludes up to 90 days of time during which the party is incapacitated as a result of the injury."). In Johns v. Wynnewood School Board of Education, 1982 OK 101, 656 P.2d 248, we noted that § 156 "specifically deals with incapacity arising from physical results of the injury and does not speak to incapacity resulting from minority." Id. ¶ 6, at 250. Section 156 of the GTCA does not toll the notice period due to incapacity resulting from minority. The Crawfords do not allege that C.C.C. was incapacitated as a result of the injury; they allege incapacity due to his status as a minor. The injury to C.C.C.'s eye did not create a legal incapacity which prevented him from giving notice of his claim. The 90-day extension in 51 O.S. § 156(E) does not apply.9

 

D. When the GTCA Controls, 12 O.S. § 96 Does Not Apply

 

¶16 Title 12, § 96 is the general statute of limitations for a tort action brought by a person under a legal disability. This section provides:

If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed, except that, after the effective date of this section, an action for personal injury to a minor under the age of twelve (12) arising from medical malpractice must be brought by the minor's parent or guardian within seven (7) years of infliction of the injury, provided a minor twelve (12) years of age and older must bring such action within one (1) year after attaining majority, but in no event less than two (2) years from the date of infliction of the injury, and an action for personal injury arising from medical malpractice to a person adjudged incompetent must be brought by the incompetent person's guardian within seven (7) years of infliction of the injury, provided an incompetent who has been adjudged competent must bring such action within one (1) year after the adjudication of such competency, but in no event less than two (2) years from the date of infliction of the injury.

12 O.S.2011 § 96 (emphasis added). C.C.C. was four years old at the time of the injury. The Crawfords note that if this was a malpractice action against a non-governmental entity and the GTCA did not apply, the limitations period for their claims would be seven years. Without citing any authority, the Crawfords argue the seven-year statute of limitations that applies to a non-GTCA action for personal injuries to a minor arising from medical malpractice should apply to a GTCA action for the same, thereby extending the one-year notice period to seven years.10

 

¶17 In Johns, this Court determined that 12 O.S. § 96 does not apply to governmental tort claims for injuries to minors. In Johns, a minor was injured at school on September 18, 1979. See Johns, 1982 OK 101, ¶ 2, 656 P.2d at 248. The parents of the minor gave notice of the claim to the school board on September 10, 1981 and then filed suit. Id. ¶ 2, at 249. At that time, the Oklahoma Political Subdivision Tort Claims Act--the predecessor to the GTCA--applied, and the time limit for presenting notice of the claim was only 120 days.11 The school board sought to dismiss the action based on the plaintiffs' failure to comply with the 120-day notice period in 51 O.S. § 156. Id. The plaintiffs responded that, as a minor, plaintiff was under a legal disability to institute an action on her own behalf and, therefore, she could do so at any time within one year after she attained majority,12 pursuant to 12 O.S.1971 § 96. Id. This Court was presented the following federal certified question:

Are the time limitations contained in the Oklahoma Political Subdivision Tort Claims Act, 51 Okla.Stat. (1978 Supp.) § 156, controlling as to a cause of action accrued to a minor, notwithstanding the provisions of 12 Okla.Stat.1971 § 96?

Id. ¶ 1, at 248. We answered "yes" and determined that "[t]he time limitations contained in the Oklahoma Political Subdivision Tort Claims Act, 51 Okla.Stat. (1978 Supp.) (now 1981) § 156, control as to a cause of action accrued to a minor, notwithstanding the provisions of 12 O.S.1981 § 96." Id. ¶ 7, at 250. We held "that the minority of the plaintiff when injured did not toll the time limits as prescribed in 51 Okla.Stat. § 156 as against the defendant School Board." Id. ¶ 2, at 248-49. In reaching our answer in Johns, we examined the tolling provision in § 156: "The time for giving written notice of claim pursuant to the provisions of this section does not include the time during which the person injured is unable due to incapacitation from the injury to give such notice, not exceeding ninety (90) days of incapacity." 51 O.S.Supp.1978 § 156(C) (renumbered 51 O.S. § 156(E) by Laws 1984, c. 226, § 8, eff. Oct. 1, 1985). This is the same provision at issue today. See 51 O.S.Supp.2012 § 156(E). In Johns, we determined:

In view of the fact the Act specifically deals with incapacity arising from physical results of the injury and does not speak to incapacity resulting from minority, it is proper to apply the language of the statute to all incapacities not specifically excepted in view of the clear language of the statute's (§ 156) unqualified statement that no action may be maintained unless notice is filed within 120 days, and action commenced within six months.

Johns, 1982 OK 101, ¶ 6, 656 P.2d at 250 (applying 51 O.S.Supp.1978 § 156(B)) (footnotes omitted).

¶18 The same question is posed today. Does 12 O.S.2011 § 96 apply to a governmental tort claim for injuries to a minor? More specifically, does the seven-year limitations period in 12 O.S.2011 § 96 supplant the one-year notice period in 51 O.S.Supp.2012 § 156(B) when the governmental tort claim is for injuries to a minor under the age of twelve (12) arising from medical malpractice? Continuing to follow Johns, we hold the GTCA, 51 O.S.Supp.2012 § 156, controls as to a cause of action accrued to a minor notwithstanding the provisions of 12 O.S.2011 § 96. Section 96 does not apply. The one-year notice period in 51 O.S. § 156 applies to a governmental tort claim for injuries to a minor arising from medical malpractice. Minority does not toll the time limits as prescribed in 51 O.S.Supp.2012 § 156.

¶19 Our holding in Johns remains instructive even after subsequent amendments to 12 O.S. § 96. In 1987, 12 O.S. § 96 was amended to add exceptions to the statute of limitations for injuries to a minor arising out of medical malpractice. However, the amendments to § 96 do not change this Court's determination in Johns that when the GTCA controls, § 96 does not apply. In order to toll or extend the notice period for injuries to minors in a GTCA action, the Legislature would need to amend the GTCA. In Johns, we explained:

The exception granted infants from the running of the statute of limitations rests on legislative determination and does not emanate from a fundamental precept of the law. It is within the power of the legislature to place infants in the same category as adults in the respect of limitations and unless excepted by statute, the limitations statutes apply to that class of persons. . . . [E]xception of infants from limitations statutes is a matter of legislative cognizance. The exception from the limitation provisions for persons under incapacities is spoken to in § 156 and no mention is made of exceptions for minors.

Johns, 1982 OK 101, ¶¶ 4, 6, 656 P.2d at 249-50 (internal citations omitted). To this day, the Legislature has not amended 51 O.S. § 156 to add a specific exception for minors with tort claims against the government.

¶20 This Court has cited Johns for its precedential value multiple times since it was decided in 1982.13 In Hamilton v. Vaden, 1986 OK 36, 721 P.2d 412, this Court concluded the Legislature intended for 12 O.S.1981 § 96 to toll the two-year statute of limitations provided by 12 O.S.1981 § 95(3) and, therefore, a minor could bring an action for personal injuries any time before they reached majority plus one year. See id. ¶ 20, at 419. We noted:

The only diversion from the course we have plotted here is found within the provisions of the Political Subdivision Tort Claim Act, 51 O.S. 1981 § 156. In Johns v. Wynnewood School Bd. of Educ., 656 P.2d 248 (Okla.1982), a minor was injured while on the school yard playing during recess. In Ross v. City of Shawnee, 683 P.2d 535 (Okla.1984), the minor received injuries at the municipal swimming pool. The minors were held to the same statute of limitations as adults under 51 O.S. 1981 § 156. These cases are distinguishable because the notice provision of the Political Subdivision Tort Claims Act furthers legitimate state interests by fostering a prompt investigation while the evidence is fresh; the opportunity to repair any dangerous condition, quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability. Reirdon v. Wilburton Bd. of Ed., 611 P.2d 239-40 (Okla.1980). Further, by its terms 51 O.S. 1981 § 170 supersedes all other statutory provisions.

Hamilton, 1986 OK 36, n. 31, 721 P.2d at 419. More recently, in Hall v. GEO Group, Inc., 2014 OK 22, 324 P.3d 399, we reiterated that when the GTCA controls, 12 O.S. § 96 does not apply. In Hall, an inmate alleged he was injured on September 7, 2010 while being transported in a van. See id. ¶ 3, at 402. On June 18, 2012, he filed a negligence action in the district court. Id. ¶ 5, at 402. In response to the prison's motion to dismiss based on the statute of limitations, the inmate responded that, pursuant to 12 O.S. § 96, the limitations period in 12 O.S.2011 § 95(11) should be tolled until one year after his legal disability was removed. Id. ¶ 6, at 402. First, we determined compliance with the notice provisions of the GTCA was required for a prisoner, or former prisoner, to bring a tort action against a private correctional facility. Id. ¶¶ 1, 10-13, at 400, 403-04. Then, the Court looked at whether 12 O.S. § 96 tolled the GTCA's one-year notice period. Id. ¶¶ 14-16, at 404-05. Citing Johns, we explained: "As for Hall's claims of tolling because he was under a legal disability we have previously held that where the GTCA includes specific provisions, the general statute of limitations does not apply." Id. ¶ 15, at 405 (footnotes omitted). We held that because the GTCA was controlling, 12 O.S. § 96 did not apply. See id. ¶ 14, at 404. Because the GTCA only tolls the notice period due to incapacity from the injury for 90 days, the case was dismissed as untimely. Id. ¶¶ 1, 10, 19, at 400-01, 404, 406.

¶21 Like the plaintiffs in Johns and Hall, the Crawfords argue that 12 O.S. § 96 applies to their tort claim against the government. In Johns, we said that when the GTCA controls, tolling the notice period is limited to § 156--which does not include incapacity due to minority--and § 96 does not apply. In Hall, we said when the GTCA controls, tolling of the notice period due to incapacity as a result of the injury is limited to 90 days, and § 96 does not apply. In this case, the GTCA also controls. We cannot square applying 12 O.S. § 96 to the Crawfords' claim against the government when we did not apply § 96 to the plaintiffs' claims against the government in Johns and Hall.

¶22 Without explanation, the Crawfords assert that 12 O.S. § 96 applies pursuant to 51 O.S. § 164. Section 164 provides:

The laws and statutes of the State of Oklahoma and the Rules of Civil Procedure, as promulgated and adopted by the Supreme Court of Oklahoma insofar as applicable and to the extent that such rules are not inconsistent with the provisions of this act, shall apply to and govern all actions brought under the provisions of this act.

51 O.S.2011 § 164. There are some situations where Title 12 applies to a governmental tort claim. We have found the general laws and rules of civil procedure apply when the GTCA does not speak specifically to a matter. See Cruse v. Bd. of Cty. Comm'rs of Atoka Cty., 1995 OK 143, ¶ 17, 910 P.2d 998, 1005 (holding 12 O.S.1991 § 100 applies to a GTCA claim when the action was timely-filed in district court); Rout v. Crescent Pub. Works Auth., 1994 OK 85, ¶¶ 8-10, 878 P.2d 1045, 1049-50 (holding 12 O.S.1991 § 940 applies to a GTCA claim, because the GTCA does not contain a specific provision for attorney fees and costs). This Court will only apply the general laws of the State to governmental tort claims where there has been timely compliance with the GTCA. The notice required by 51 O.S. § 156 is considered a mandatory prerequisite and jurisdictional requirement to filing a tort claim in district court. See Hall, 2014 OK 22, ¶¶ 1, 19, 324 P.3d at 400, 406. Only "where valid notice has been given and the governmental tort claims action has been timely filed under § 157, the court's power is invoked and, at that point, pursuant to the broad terms of 51 O.S.1991, § 164, the governmental tort claims action is controlled by the laws of this state . . . ." Cruse, 1995 OK 143, ¶ 17, 910 P.2d at 1005 (emphasis added).

¶23 The GTCA is not silent as to when the notice period can be tolled. The GTCA's notice provisions, including the time limits for giving notice and when the notice period may be tolled are specific, detailed, and comprehensive. In Johns, we said:

Title 51 O.S. § 156 contains detailed provisions for limitations of actions against political subdivisions. There are no express exceptions saving the rights of infants found within this section or any other portion of the Act. This is true despite the detailed limitation provisions of 51 O.S. §§ 156 and 157. On the face of the statute, the limitations provided by § 156 are detailed and also appear absolute in that Subdivision B states, "A claim . . . shall be forever barred unless notice thereof is filed within one hundred twenty days after the loss occurs." The comprehensive nature of the limitations provisions is evident. . . . The time for giving notice excludes up to 90 days of time during which the party is incapacitated as a result of the injury. . . . In view of the fact the Act specifically deals with incapacity arising from physical results of the injury and does not speak to incapacity resulting from minority, it is proper to apply the language of the statute to all incapacities not specifically excepted in view of the clear language of the statute's (§ 156) unqualified statement that no action may be maintained unless notice is filed within 120 days, and action commenced within six months.

Johns, 1982 OK 101, ¶ 6, 656 P.2d at 249-50 (footnotes omitted) (applying 51 O.S.Supp.1978 § 156(B)-(C)). Section 156(E) of the GTCA clearly and unambiguously provides that the notice period may be tolled only due to incapacitation from the injury. The GTCA does not provide for tolling due to minority. Furthermore, tolling authorized by § 156(E) is limited to 90 days. Applying the seven-year limitation in 12 O.S. § 96 to the notice period in 51 O.S. § 156 would be inconsistent with the provisions of the GTCA and is, therefore, not permitted by 51 O.S. § 164. Until the GTCA contains exceptions for minors or specific tolling provisions for minors, the one-year notice period applies equally to minors.

¶24 This conclusion is consistent with the Legislature's limited waiver of sovereign immunity. See 51 O.S.2011 § 152.1(B); 51 O.S.Supp.2015 § 153(A); Cruse, 1995 OK 143, ¶ 10, 910 P.2d at 1001-02. We have said: "The manner in which a party may overcome sovereign immunity and maintain an action against the government is narrowly structured by the procedural prerequisites in §§ 156 and 157." Cruse, 1995 OK 143, ¶ 11, 910 P.2d at 1002 (footnote omitted). "Upon compliance with the time-limited procedural steps in §§ 156 and 157, the state's consent to be sued is manifest, the sovereign immunity bar is removed, and a judicial remedy for enforcement of the tort claim against the state or political subdivision may be maintained." Id. ¶ 12, 1002-03.

¶25 The Crawfords did not give OSUMC timely notice of their tort claim in compliance with § 156. As a result, they have not brought themselves within the limited waiver of sovereign immunity contained in the GTCA. The Crawfords cannot invoke the jurisdiction of the district court.

IV. CONCLUSION

¶26 If the discovery rule applies to the underlying tort, it applies to the commencement of the one-year notice period in the GTCA. Thus, the discovery rule applies to medical negligence claims subject to the GTCA. The notice period provided in 51 O.S.Supp.2012 § 156(B) does not commence until the plaintiff has sufficient information that they know or should have known of the injury itself and the wrongfulness and cause of the injury. The discovery rule does not operate to toll commencement of the one-year notice period until the plaintiff learns the tortfeasor is an employee of the state or a political subdivision. Furthermore, 51 O.S.Supp.2012 § 156(E) does not toll the notice period due to the injured person's status as a minor. When the GTCA controls, the limitations for personal injuries to minors arising out of medical malpractice in 12 O.S.2011 § 96 do not apply.

¶27 The discovery rule does not toll commencement of the one-year notice period until the Crawfords learned Dr. Hall was an employee of OSUMC. The one-year notice period commenced when C.C.C.'s eye was removed on June 21, 2017. The Crawfords did not give OSUMC notice of their tort claims within one year of the date the loss occurred. As a result, their claims against OSUMC are barred. The district court properly dismissed those claims for lack of jurisdiction. This matter is remanded for further proceedings.

CERTIORARI PREVIOUSLY GRANTED;
ORDER OF DISTRICT COURT IS AFFIRMED;
REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: Darby, C.J., Kane, V.C.J., Winchester, Rowe, and Kuehn, JJ.

CONCUR IN RESULT: Combs (by separate writing) and Gurich, JJ.

DISSENT: Kauger (by separate writing) and Edmondson, JJ.

FOOTNOTES

1 Litigants--and the courts--often conflate the discovery rule, equitable tolling, and estoppel. Nonetheless, these are separate theories a plaintiff may employ to defeat a statute of limitations defense. See Calvert v. Swinford, 2016 OK 100, ¶ 11, 382 P.3d 1028, 1033 (discovery rule); Masquat v. DaimlerChrysler Corp., 2008 OK 67, ¶ 18, 195 P.3d 48, 54-55 (equitable tolling based on fraudulent concealment); Jarvis v. City of Stillwater, 1987 OK 5, ¶ 4, 732 P.2d 470, 472-73 (estoppel).

At no point have the Crawfords advocated for equitable tolling based on fraudulent concealment. The Crawfords raise an estoppel argument for the first time in their Reply Brief. Estoppel was not raised below, and "[t]his Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction." In re Guardianship of Stanfield, 2012 OK 8, ¶ 27, 276 P.3d 989, 1001. Furthermore, "[n]ew arguments may not be raised for the first time in a reply brief." Cox Okla. Telecom, LLC, v. State ex rel. Okla. Corp. Comm'n, 2007 OK 55, ¶ 33, 164 P.3d 150, 162-63. This opinion addresses only whether the discovery rule applies to the statutory time limits in the GTCA.

2 OSUMC's position is that the GTCA applies. Section 152 of the GTCA provided, in part: "Except as provided in subparagraph b of this paragraph, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients . . . ." 51 O.S.Supp.2014 § 152(7)(c). At no point has OSUMC argued the case should be dismissed pursuant to this provision.

3 In Watkins v. Central State Griffin Memorial Hospital, 2016 OK 71, 377 P.3d 124, this Court acknowledged--without explicitly stating--that the discovery rule applies to the one-year notice period in 51 O.S. § 156(B). In Watkins, the plaintiff alleged hospital employees actively concealed information essential to her medical malpractice claims. See Watkins, 2016 OK 71, ¶ 5, 377 P.3d at 126. Our analysis was based on the doctrine of estoppel rather than the discovery rule. However, the discovery rule is referenced in the final two paragraphs of the opinion. Id. ¶¶ 30-31, at 132. In addition to finding a question of fact existed as to whether the doctrine of estoppel barred a defense based on the one-year limitation on notice, we also found "it is for the trier of fact to determine when [the plaintiff] knew, or in the exercise of reasonable diligence should have known, sufficient information to be aware of her claims." Id. ¶ 31, at 132. The Court was clearly referring to the discovery rule.

4 The statute of limitations for general medical malpractice claims provides the action must be "brought within two (2) years of the date the plaintiff knew or should have known, through the exercise of reasonable diligence, of the existence of the death, injury or condition complained of . . . ." 76 O.S.2011 § 18. The GTCA provides that "claims . . . are to be presented within one (1) year of the date the loss occurs." 51 O.S.Supp.2012 § 156(B). The GTCA defines "loss" as "death or injury to the body or rights of a person or damage to real or personal property or rights therein." 51 O.S.Supp.2014 § 152(8).

5 The Crawfords, in fact, did bring a medical malpractice action against Saint Francis based on Dr. Hall's acts and omissions. When the lawsuit was initially filed on February 2, 2018, the Crawfords named Saint Francis as the only defendant.

6 The Crawfords have never named Dr. Hall, individually, as a defendant in this lawsuit. Residents and interns are subject to individual liability for torts committed while practicing medicine or providing medical treatment to patients. See 51 O.S.Supp.2014 § 152(7)(c); Anderson v. Eichner, 1994 OK 136, ¶¶ 15-16, 890 P.2d 1329, 1338-39; see also 51 O.S.2011 § 154(E) (limits their liability to $100,000); 51 O.S.Supp.2012 § 156(G) ("Claims and suits against resident physicians or interns shall be made in accordance with the provisions of Titles 12 and 76 of the Oklahoma Statutes."); 51 O.S.Supp.2012 § 163(C) ("[S]uits based on the conduct of resident physicians and interns shall be made against the individual consistent with the provisions of Title 12 of the Oklahoma Statutes."). The notice provisions of the GTCA do not apply to suits against individual residents and interns. See Lykins v. Saint Francis Hosp., Inc., 1995 OK 135, ¶¶ 8-10, 917 P.2d 1, 4-5.

7 At that point, the Crawfords still had four months to give OSUMC timely notice of their claim.

8 This argument was not presented to the trial court. Generally, "[t]his Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of its appellate jurisdiction." Stanfield, 2012 OK 8, ¶ 27, 276 P.3d at 1001. However, we will address this argument because it is determinative of the district court's jurisdiction. Jurisdictional inquires may be made at any stage of the proceedings. See Hall v. GEO Grp., Inc., 2014 OK 22, ¶ 12, 324 P.3d 399, 404. As we have said, compliance with the notice provisions of the GTCA is a mandatory prerequisite and jurisdictional requirement for bringing a suit for tort damages. See id. ¶¶ 1, 19, at 400, 406. Resolution of this issue affects whether notice was timely and, consequently, whether the district court had jurisdiction over the claims.

9 We further decline the Crawfords' request that our interpretation of 51 O.S.Supp.2012 § 156(E) apply prospectively only.

10 This argument was not raised below. However, we will address the issue because it is determinative of the district court's jurisdiction. See supra note 8.

11 When Johns was decided, 51 O.S.Supp.1978 § 156(B) provided: "A claim against a political subdivision or employee shall be forever barred unless notice thereof is filed with the clerk of the governing body of the political subdivision within one hundred twenty (120) days after the loss occurs." The statute has since been amended to extend the notice period to one year. Today, the statute provides: "[C]laims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs. A claim against the state or a political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs." 51 O.S.Supp.2012 § 156(B).

12 At that time, 12 O.S. § 96 did not include the current exceptions for personal injuries to a minor arising out of medical malpractice. Section 96 provided:

If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed.

12 O.S.1971 § 96. The general "within one (1) year after such disability shall be removed" statute of limitations for a person with a legal disability applied to a minor's action for personal injuries. Id.; see Hamilton v. Vaden, 1986 OK 36, ¶ 20, 721 P.2d 412, 419 ("[A] minor is entitled to institute an action for personal injuries anytime before he/she reaches majority plus one year.").

13 See, e.g., Hall, 2014 OK 22, n. 26, 324 P.3d at 405; Cruse v. Bd. of Cty. Comm'rs of Atoka Cty., 1995 OK 143, ¶ 13, 910 P.2d 998, 1003; Rout v. Crescent Pub. Works Auth., 1994 OK 85, n. 12, 878 P.2d 1045, 1049; In re Estate of Speake, 1987 OK 61, n. 14, 743 P.2d 648, 652; Hamilton, 1986 OK 36, n. 31, 721 P.2d at 419; Ross v. City of Shawnee, 1984 OK 43, ¶ 14, 683 P.2d 535, 537.

 

 

COMBS, J., with whom GURICH, J., joins, concurring in result:

¶1 I concur in result with the majority opinion that affirms dismissal of the Crawfords' claims against OSUMC for lack of subject matter jurisdiction based upon their failure to give timely notice under the Governmental Torts Claims Act (GTCA), 51 O.S.Supp.2017, § 156(B). The GTCA defines the "State" as "the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof," id. § 152(13) (emphasis added), and requires "[a]ny person having a claim against the state . . . within the scope of Section 151 et seq. of this title [to] present a claim to the state . . . for any appropriate relief including the award of money damages . . . . within one (1) year of the date the loss occurs," id. § 156(A)--(B) (emphasis added). As a state institution and hospital affiliated with a public university, OSUMC is the "State" for purposes of our analysis, and the Crawfords' claims against OSUMC are "claim[s] against the state" for which notice is required.

¶2 I write separately, however, to emphasize the fact that dismissal of OSUMC from the lawsuit based upon failure to comply with the GTCA's notice requirements should not be viewed as foreclosing any action against Dr. Sawyer Hall, the resident physician or intern employed by OSUMC whose alleged misdiagnosis resulted in the loss of C.C.C.'s eye.1

¶3 First, I wish to point out that nothing in the majority opinion should be viewed as a determination that Dr. Hall's actions in "practicing medicine or providing medical treatment to patients" were within the course and scope of his state employment and that he is therefore "immune from liability for torts" under section 152.1(A) of the GTCA,2 or that the State alone would therefore be liable under section 153(A) of the GTCA.3 Rather, as we recognized in Anderson v. Eichner, 1994 OK 136, 890 P.2d 1329, "the legislature intended for these physicians"--which includes resident physicians and interns, see id. ¶¶ 3, 5, 10, 890 P.2d at 1333--34, 1337--"to be outside the scope of their employment whenever they engage in the practice of medicine or in the provision of medical or surgical treatment, even though they also may be acting as teacher or student." Id. ¶ 11, 890 P.2d at 1337. Because the provision of medical treatment falls outside the scope of employment for resident physicians and interns like Dr. Hall, he would be individually liable for tortious conduct that occurred while he was providing medical treatment to C.C.C., but only up to the amount specified in section 154(E) of the GTCA. See Anderson, 1994 OK 136, ¶¶ 14--16 & n.30, 890 P.2d at 1338--39 & n.30.

¶4 The Anderson Court's holding is based upon the statutory language in section 152(7)(c) of the GTCA. Section 152(7) is "a definitional section that describes who are state employees." Anderson, 1994 OK 136, ¶ 14, 890 P.2d at 1338 (talking about 51 O.S.Supp.1986, § 152(5), which was renumbered as paragraph (6) in 2007 and as paragraph (7) in 2010). When the Anderson case was decided, the definition of a state "employee" only included three classes of physicians: "[1] physicians acting in an administrative capacity, [2] resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma College of Medicine or the Oklahoma College of Osteopathic Medicine and Surgery and [3] faculty members of the University of Oklahoma College of medicine and the Oklahoma College of Osteopathic Medicine and Surgery, while engaged in their teaching duties." Id. ¶ 10 n.21, 890 P.2d at 1336 n.21 (quoting 51 O.S.Supp.1986, § 152(5)). The final sentence of the definition contained this proviso: "However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients." Id. (quoting 51 O.S.Supp.1986, § 152(5)). The Anderson Court determined that this proviso "clearly lays down the rule that, although the defendant physicians might otherwise be considered state employees when involved in the educational process, they nonetheless stand outside the scope of their employment whenever they engage in the practice of medicine. . . . The provisions of § 152 specifically remove from the scope of governmental immunity those acts of physicians educators and students which fall under the rubric of medical practice. For these acts the physician educators and students are subject to individual tort liability."4 Id. ¶¶ 14, 16, 890 P.2d at 1338--39. In support of their conclusion that resident physicians and interns are individually liable, the Anderson Court pointed to other provisions in the GTCA like section 156(G), which "mandates that claims against resident physicians or interns shall be made in accordance with Titles 12 (civil procedure) and 76 (torts) of the Oklahoma Statutes" rather than in accordance with the notice requirements set out in subsections (A) through (F). Id. ¶ 15 & n.28, 890 P.2d at 1338 & n.28 (citing 51 O.S.Supp.1986, § 156(G)).

¶5 Since Anderson, section 152 has been amended numerous times. Perhaps of most consequence to our analysis is the amendment occurring in 2002 as a result of Senate Bill 1571. That 2002 amendment added both a fourth class of physicians who qualify as state employees under subparagraph (b) and a limiting phrase to the final proviso in subparagraph (c):

(b) For the purpose of The Governmental Tort Claims Act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:

(1) physicians acting in an administrative capacity,

(2) resident physicians and resident interns participating in a graduate medical education program of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University, and

(3) faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties., and

(4) physicians who practice medicine or act in an administrative capacity as an employee of this state"

Physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.

(c) Except as provided in subparagraph (b) of paragraph 5 of this section, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients.

Act of June 5, 2002, ch. 462, sec. 2, § 152(5)(b)--(c), 2002 Okla. Sess. Laws 1998, 2000--01. But that new limitation on the proviso did not disrupt the mechanics of how the proviso interacts with the other three classes of physicians set forth in divisions (1), (2), and (3) of subparagraph (b). The Legislature did not tinker with those three classes or add a limitation that specifically referenced everyone in those classes. The simultaneous amendments in subparagraphs (b) and (c) indicate that the Legislature only intended to exclude the class in the new division (4)--which is the only class of "physicians who practice medicine"--from the proviso in subparagraph (c) that renders the State not liable for "tortious conduct . . . [committed] while practicing medicine." If the Legislature had intended to exclude all classes in division (1), (2), (3), and (4) from the effects of the proviso in subparagraph (c), it could have done so with a deletion of the proviso altogether or with clearer language, like that appearing in House Bill 2637 from the same legislative session:

(c) In Except for physicians or interns defined as employees by subparagraph b of this paragraph, in no event shall the state or a political subdivision be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients.

HB 2637, 48th Leg., 2d Reg. Sess. (Okla. 2002) (enrolled version). House Bill 2637's language never became effective because it was both vetoed by Governor Keating on May 30, 2002, see Okla. H.R. Journal, 48th Leg., 2d Reg. Sess. 1986 (2002), and repealed by the Legislature in Senate Bill 1571, see Act of June 5, 2002, ch. 462, sec. 5, 2002 Okla. Sess. Laws at 2003. Furthermore, if we gave the new introductory limitation effect over all classes of physicians listed in subparagraph (b), it appears the proviso in subparagraph (c) would be rendered meaningless. Why would the Legislature use subparagraph (b) to define all physicians who qualify as state employees and the proviso in subparagraph (c) to specify that the State would never be liable for their tortious conduct while practicing medicine or providing medical treatment, and then use the new introductory limitation to restore the State's liability for all physicians who qualify as state employees? Such an interpretation would fail to give effect to every part of the statute, which is a result we strive to avoid when interpreting statutes.5 Everything points to an interpretation that still renders the proviso in subparagraph (c) applicable to resident physicians and interns. Thus, the holdings in Anderson remain good law even after the 2002 amendment.

¶6 Since 2002, the Legislature has made several more amendments to the definition of a state "employee." None of the amendments changed subparagraph (c), and the Legislature's amendments to subparagraph (b) have only added additional classes of physicians who qualify as state employees. Some of those new classes are physicians who "provide medical care," see 51 O.S.Supp.2017, § 152(7)(b)(5), (7), while other new classes only "perform[] administrative duties," see id. § 152(7)(b)(6). Based on our analysis of the 2002 amendment, the proviso in subparagraph (c) should only apply to those classes whose status as a state employee is not dependent upon their provision of medical care or treatment. None of these more recent amendments have tinkered with the mechanics of how the proviso in subparagraph (c) interacts with the classes of physicians identified in divisions (1), (2), and (3) of subparagraph (b), which includes resident physicians and interns. Thus, the holdings in Anderson remain good law today.

¶7 Second, I wish to point out that nothing in the majority opinion should be viewed as a determination that claims which may be brought against Dr. Hall are subject to the same GTCA notice requirements and are therefore barred for failure to give timely notice. They are not. Section 156 generally sets out the notice requirements that must be met to maintain an action against the State, but subsection (G) sets apart "[c]laims and suits against resident physicians or interns" as different from claims and suits against the State and directs plaintiffs to follow "the provisions of Titles 12 and 76 of the Oklahoma Statutes" in asserting such claims. Moreover, this Court previously held in Lykins v. Saint Francis Hospital, Inc., 1995 OK 135, 917 P.2d 1, that the GTCA's notice requirements do not apply to medical malpractice claims brought against resident physicians or interns. Id. ¶¶ 8, 10, 917 P.2d at 4--5 ("The defendant physicians [which include at least four resident physicians or interns] argue that as state employees within the meaning of the GTCA, they are subject to that Act's notice provisions. . . . The defendant physicians urge that the parents' failure to file with the State a notice of claim bars this tort action. . . . We are not persuaded by the argument advanced by the defendant physicians. . . . We hence reject the notion that the Act's public-tort procedures apply to the parents' claim."). Consequently, if the Crawfords ever pursue claims against Dr. Hall individually, they do not need to comply with the notice provisions in section 156(A) through (E) of the GTCA, nor should they worry about the 1-year deadline in section 156(B). The Crawfords only need to comply with the applicable procedure and deadlines set forth in Titles 12 and 76 of the Oklahoma Statutes.

¶8 Here, the confusion about which entity employed Dr. Hall is a direct result of the deception by perception engaged in by OSUMC, Dr. Hall, Saint Francis Hospital, Inc., and the other Defendants, and that confusion has only served to delay the Crawfords in their attempts to hold the responsible parties accountable.

¶9 In conclusion, the majority opinion does not foreclose any redress against Dr. Sawyer Hall.

FOOTNOTES

1 As the majority opinion observes in footnote 6, "[t]he Crawfords have never named Dr. Hall, individually, as a defendant in this lawsuit." Majority Op. ¶ 13 n.6.

2 See generally 51 O.S.2011, § 152.1(A) ("The state . . . and all of [its] employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts.").

3 See generally 51 O.S.Supp.2017, § 153(A) ("The state . . . shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act . . . .").

4 Despite their conclusion that the State would not be liable for the medical practice of resident physicians and interns, the Anderson Court recognized that the Legislature had enacted a cap on the amount of their individual liability in section 154 of the GTCA; their liability would be limited to $100,000. Id. ¶ 15 & n.30, 890 P.2d at 1338 & n.30 (citing 51 O.S.Supp.1986, § 154(D), which was renumbered to subsection (E) in 2003).

5 See, e.g., Cole v. Josey, 2019 OK 39, ¶ 3, 457 P.3d 1007, 1009 ("In construing statutes, harmony, not confusion, is to be sought and when parts of an act are reasonably susceptible of a construction which will give effect to both and to the words of each, without violence to either, such construction should be adopted in preference to one which, though reasonable, leads to the conclusion that there is a conflict."); TWA v. McKinley, 1988 OK 5, ¶ 9, 749 P.2d 108, 110 ("Statutes must be interpreted in a manner which renders every word and sentence operative, rather than in a manner which would render a specific statutory provision nugatory."); Darnell v. Chrysler Corp., 1984 OK 57, 687 P.2d 132, 134 ("Every provision of the Constitution and statutes of Oklahoma is presumed to have been intended for some useful purpose and every provision should be given effect.").

 

 

KAUGER, J., dissenting:

¶1 Four years after §164 was enacted, the Court, in Johns By and Through Johns v. Wynnewood School Bd. of Education, 1982 OK 101, 656 P.2d 248, addressed whether the tolling statute, 12 O.S. 1981 §96 applied to the Governmental Tort Claims Act (the Act). Without regard to the purposes behind the tolling statute,1 or consideration of the court's duty to guard the rights of minors,2 the Court ignored the Okla. Constitution and the Act's clear, explicit, and mandatory language incorporating the laws of the State of Oklahoma into the Act.3 Instead, it held that the minority of the plaintiff when injured did not toll the time limits prescribed by the Act.

¶2 At statehood, the Okla. Const. art. 5, §59, provided, and still does, that:

Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted.4

In 1910, the Legislature moved to protect persons with disabilities which included minors.5 Then, after decades of attacks on sovereign immunity, the Legislature enacted the Governmental Tort Claims Act. The Act included 51 O.S. Supp. 1978 §164 which provides:

The laws and statutes of the State of Oklahoma and the Rules of Civil Procedure, as promulgated and adopted by the Supreme Court of Oklahoma insofar as applicable and to the extent that such rules are not inconsistent with the provisions of this act, shall apply to and govern all actions brought under the provisions of this act.

¶3 It is noteworthy that the tolling statute, 12 O.S. Supp. 1987 §96, has only been amended once since Johns, supra. It provides:

If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed, except that, after the effective date of this section, an action for personal injury to a minor under the age of twelve (12) arising from medical malpractice must be brought by the minor's parent or guardian within seven (7) years of infliction of the injury, provided a minor twelve (12) years of age and older must bring such action within one (1) year after attaining majority, but in no event less than two (2) years from the date of infliction of the injury, and an action for personal injury arising from medical malpractice to a person adjudged incompetent must be brought by the incompetent person's guardian within seven (7) years of infliction of the injury, provided an incompetent who has been adjudged competent must bring such action within one (1) year after the adjudication of such competency, but in no event less than two (2) years from the date of infliction of the injury.

The amendments, which are not dispositive of this cause because the injury occurred when the minor was four years old and the cause was filed eight months after the injury occurred, carved out a special tolling period for minors who pursued only medical malpractice claims. In 1991, in Mowles By and Through Mowles v. Hillcrest Heath Center, 1991 OK CIV APP 118, 832 P.2d 24, (cert. denied 6/16/92),6 the Oklahoma Court of Appeals, declared this portion of the special tolling period an unconstitutional special law and ruled that minors bringing medical malpractice claims must be treated to the same limitations as any minor bringing other actions which accrued during minority.

¶4 The Act does not conflict with either the constitution or the statute because, as Johns, supra, acknowledges, the tolling period exception for minors is not mentioned in the Act. The rationale the Court offered to reach its conclusion in Johns, supra, was that because no mention was made of exceptions for minors in the Act, it must be meant to be exclusive to all other laws. This rationale is unconvincing, as the Court later implied in Rout v. Crescent Public Works Authority, 1994 OK 85, ¶¶8-10, 878 P.2d 1045.

¶5 Rout concerned the issue of whether a general attorney fee statute, 12 O.S. 1991 §9407 could be applied to recover attorney fees in negligent or willful injury to property actions brought pursuant to the Act. The Court said that:

1) the Act is the exclusive remedy for an injured plaintiff to recover against a governmental entity for its negligence and that limitations within the Act control over general statutory law;

2) However, the Act is silent regarding attorney's fees and costs, and it does not speak to an award of fees to either party;

3) Subsection 164 provides that the laws and statutes of the State of Oklahoma shall apply to and govern all actions brought under the provisions of this act insofar as applicable and not inconsistent with Act; and

4) The fact that there are no specific provisions within the Act for attorney's fees and costs and 12 O.S. 1991 § 940 specifically authorizes attorney's fees and costs in actions such as this, does not create an inconsistency between the two statutes.

¶6 This is precisely the reasoning the Court should have utilized in Johns, supra. Under Okla. Const. art. 5 §59 and 51 O.S. Supp. 1978 §164, the Legislature did not need to expressly include the minor tolling statute in the Act for the tolling statute to be applicable. The plain reading of the text should have controlled because:

1) The Oklahoma Legislature intervened to protect the rights of children by enacting the minor savings clause in 12 O.S. 1910 §96;8

2) The savings statute serves to toll the applicable statute of limitations until a minor reaches majority;

3) It is the duty of the courts sedulously to guard the rights of minors. No presumption against an infant is permitted; rather every presumption is indulged in his/her favor;9

4) The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to a disability;10

5) This Court has a longstanding recognition that the statutory rights of minors and incompetents are to be enforced;11 and

6) To allow the statute of limitations to run during the minority of a minor, the very period through which the minor needs and is entitled to the support of parents, defies reason;12

7) Our jurisprudence in every other facet requires that the best interest of the child be considered;13

8) The Court failed to enforce the text of the Constitution and the statute. It was wrong and Johns, supra, and Ross v. City of Shawnee, 1984 OK 43, ¶14, 683 P.2d 535 should be overruled.

¶7 In this cause, the majority opinion notes that several cases have cited Johns, supra for precedential value since it was decided in 1982.14 However, only one of the cases, Ross v. City of Shawnee, 1984 OK 43, ¶14, 683 P.2d 535, concerned the same issue as Johns, supra,15 while the others were cited for other propositions of law.16 Some Courts have held like Johns, supra.17 Others have noted that the purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to a disability, also recognize that allowing the limitations period to run, in a Tort Claims Act, during the minority of a minor, defies reason.18 Regardless of the decisions of other jurisdictions, our Constitution and the incorporating statutory provision of the Oklahoma Governmental Tort Claims Act require only one correct interpretation. The mandatory language must control.

CONCLUSION

¶8 Because the Court did not consider the plain text of the Okla. Const. art. 5, §5919 or 51 O.S Supp. 1978 §16420 when it decided Johns, supra, it reached the wrong conclusion. We should not perpetuate this mistake any longer. A plain reading of the texts of the Constitution and statute should be followed and Johns, supra, and Ross v. City of Shawnee, 1984 OK 43, ¶14, 683 P.2d 535, should be overruled.

FOOTNOTES

1 Hamilton By and Through Hamilton v. Vaden, 1986 OK 36, ¶16, 721 P.2d 412 [We accept the defendants view regarding the purpose of §96 which is that the Legislature intended §96 to protect the rights of those who by virtue of their legal disabilities are unable to seek redress for their injuries.].

2 Hamilton By and Through Hamilton v. Vaden, see note 1, supra at ¶14.

3 The Okla. Const. art 5, §59; Title 51 O.S. Supp. 1978 §164, see page 3, infra.

4 Title 12 O.S. 2011 § 2201 provides:

A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States.

5 Title 12 O.S. Supp. 1910 §96 provided:

If a person entitled to bring an action other than for the recovery of real property, except for a penalty for forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within (1) year after such disability shall be removed.

6 Also followed by Brown v. Jimerson, 1993 OK CIV APP 158, 862 P.2d 91.

7 Title 12 O.S. Supp. 1979 §940 provides:

A. In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

B. Provided that, the defendant in such action may, not less than ten (10) days after being served with summons, serve upon the plaintiff or his attorney a written offer to allow judgment to be taken against him. If the plaintiff accepts the offer and gives notice thereof to the defendant or his attorney, within five (5) days after the offer was served, the offer, and an affidavit that the notice of acceptance was delivered within the time limited, may be filed by the plaintiff, or the defendant, verified by affidavit. The offer and acceptance shall be noted in the journal, and judgment shall be rendered accordingly. If the notice of acceptance is not given in the period limited, the offer shall be deemed withdrawn, and shall not be given in evidence or mentioned at the trial. If upon the action being adjudicated the judgment rendered is for the defendant or for the plaintiff and is for a lesser amount than the defendant's offer, then the plaintiff shall not be entitled to recover attorney's fees, court costs and interest. If the judgment rendered is for the plaintiff, and is for the same amount as the defendant's offer, then the plaintiff and defendant shall incur their own attorney's fees, court costs and interest. And if the judgment rendered is for the plaintiff, and is for a larger amount than the defendant's offer, then the plaintiff shall be entitled to recover attorney's fees, court costs and interest.

This statute has not been amended since enacted in 1979.

8 Title 12 O.S. Supp. 1910 §96, see note 5, supra.

9 Hamilton By and Through Hamilton v. Vaden, 1986 OK 36, 721 P.2d 412. It involved the question of whether the minority of a surviving child tolled the limitation period to bring a cause of action for wrongful death of his mother. The Court recognized that courts cannot assume that parents will act effectively to protect the rights of their children; and it is neither reasonable nor realistic to rely upon parents (who may themselves be minors, or who may be ignorant, lethargic, or unconcerned) to bring an action within the time provided. It is equally unreasonable to expect a minor, whose parents fail timely to vindicate his/her legal rights, independently to seek out another adult willing to serve as next friend. To do so would ignore the realities of the family unit and the limitations of children.

10 See, Matter of Estate of Speake, 1987 OK 61, ¶16, 743 P.2d 648 [Not unmindful of the special problems minors and persons of unsound mind may encounter in their quest for judicial relief, the legislature provided a savings clause for persons who stand under such a legal disability.] .

11 Sooner Fed. Sav. & Loan Ass'n, v. Smoot, 1995 OK 31, ¶21, 894 P.2d 1082.

12 A concurring opinion in Pickens v. Donaldson, 748 So.2d 684, authored by a Justice Sullivan of the Supreme Court of Mississippi, succinctly, and effectively explains why a minor tolling statute should apply to governmental tort claims acts and it is paraphrased as follows:

1) The Legislature, has in the past intervened to protect the rights of children by enacting the minor savings clause;
2) The savings statute serves to toll the applicable statute of limitations until that time when a minor reaches his majority;
3) The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability;
4) To allow the statute of limitations to run during the disability of the minor, the very period through which the minor needs and is entitled to the support of his parents, would defy reason;
5) We have previously held that the one-year statute of limitations in the Mississippi Tort Claims Act does not begin to run until the reasonable discovery of the negligence in latent injury cases and Mississippi's children deserve that same courtesy through tolling the statute of limitations to protect their rights during minority; 6) Allowing the statute of limitations to run during minority, "the very period through which the minor needs and is entitled to" the protection of the State, defies reason, and surely was not the intention of our Legislature;
7) Our children should be our first priority. Where a choice must be made, it is our children, not our State, who should be safeguarded by our laws;
8) In Marcum v. Hancock County Sch. Dist., 741 So.2d 234 (Miss.1999), we held that the MTCA was not subject to the minor's savings clause. We were wrong and I would overrule Marcum. I would read the savings clause into the MTCA, and open our courts to children.

13 In Oklahoma, the savings statute applies to many types of cases. In Hamilton v. Vaden, 1986 OK 36, ¶20, 721 P.2d 412, the Court determined that the minority of a surviving child tolled the limitation period of statute which required personal representative to bring action for wrongful death; Richards v. Freeman, 1952 OK 174, ¶0, 247 P.2d 731[Additional two year after majority or removal of disbility is granted to commence action for recovery of realty.]; Bowens v. Poor, 1990 OK CIV APP 112, 805 P.2d 692 [Statutory time limits to determine paternity claims were tolled during child's minority.]; See also, Freeman, v. Alex Brown & Sons, Inc., 73 F.3d 279, 282 (10th Cir. 1996) [tolling statute is applicable to legally-disabled person, regardless of whether the legally-disabled person is represented by a guardian who might otherwise bring action within normal time period.].

14 The cases are: Hall v. The Geo Group, Inc., 2014 OK 22, n. 26, 324 P.3d 395; Cruse v. Board of County Commissioners of Atoka County, 1995 OK 143, ¶13, 910 P.2d 998; Rout v. Crescent Public Works Authority, 1994 OK 85, n. 12, 878 P.2d 1045; Matter of Estate of Speake, 1987 OK 61, n.14, 743 P.2d 648; Hamilton by and Through Hamilton v. Vaden, 1986 OK 36, n. 31, 721 P.2d 412; Ross v. City of Shawnee, 1984 OK 43, ¶14, 683 P.2d 535.

15 Ross v. City of Shawnee, see note 14, supra, the only other case which also involved the question of whether a minor comply with the 120-day notice provisions of the Act. The Court relied on the holding of Johns, supra, to hold that minors must comply with the 120-day notice provision of the statute.

16 Hall v. The Geo Group, Inc, see note 14, supra, involved a prisoner who was allegedly injured while being transported to a medical appointment by a private prison facility. Two years and two months later, he filed a lawsuit against the prison for negligence, insisting that the limitation period was tolled due to his injury. Johns, infra, was cited in a footnote as follows: "Johns By and Through Johns v. Wynnewood School Bd. of Education, 1982 OK 101, ¶7, 656 P.2d 248 [Provisions of 12 O.S. 1981 §96 do not apply to extend the time to give notice of a claim on behalf of a minor.]." Cruse v. Board of County Commissioners of Atoka County, see note 14, supra, concerned a defendant who sought dismissal of a refiled action. Johns, was determined not to be dispositive. In Rout v. Crescent Public Works Authority, see note 14, supra, the Court stated that it agreed "with Rout concerning the general rules that the Act is the exclusive remedy for an injured plaintiff to recover against a governmental entity for its negligence and that limitations within the Act control over general statutory law. Johns v. Wynnewood School Bd. of Educ., 656 P.2d 248, 258-50 (Okla. 1982). However, the Act is silent regarding attorney's fees and costs, and it does not speak to an award of fees to either party." In Matter of Estate of Speake, see note 10, supra, the dispositive issue was whether the one-year "recommencement-of-actions" provisions in 12 O.S. 1981 § 100, extended the time prescribed in 58 O.S. 1981 §67 to bring a post-probate will contest for a period of one year from the date the initial, timely-filed contest failed otherwise than on the merits. Johns, supra, was used to acknowledge that among the familiar statutes that regulate the time for challenging judicial action or judgment are 51 O.S.Supp. 1986 § 156 which provides time limits for the accrual of a cause of action in favor of a minor under The Governmental Tort Claims Act. In Hamilton By and Through Hamilton v. Vaden see note 13, supra, the Court stated that "defendants concede that the minority status of a child tolls the two year limitation period. The only diversion from the course we have plotted here is found within the provisions of the Political Subdivision Tort Claim Act, 51 O.S. 1981 § 156 . In Johns v. Wynnewood School Bd. of Educ., 656 P.2d 248 (Okla. 1982), a minor was injured while on the school yard playing during recess."

17 For example, Perkins v. ex rel. v. Dallas Center-Grimes, 727 N.2d 377 (Iowa 2007) because the Iowa legislature has never indicated any intent to incorporate a tolling provision into Municipal Tort Claims Act, we decline to do so; In Martinez v. Val Verde County Hospital District, 110 S. Western Rptr. 3d 480 (Court of Appeals of Texas, San Antonio 2003), the Court held that notice period of Texas Tort Claims Act was not tolled during minor's minority; In Martell v. Antelope Valley Hospital Medical Center, 67 Cal. App. 4th 978, 79 Cal. Rptr. 2d 329 (Ct. App. 2nd Dist, California 19998) the Court held that general statute of limitations for medical malpractice actions brought by minors did not apply to actions against public entity under Governmental Tort Claims Act.

18 For example, in South Bend Community Schools Corporation v. Widawski, 622 N.E. 2d 160, 162 (Indiana 1993) a minor was injured during a gym class and the Supreme Court of Indiana addressed whether the term "incapacitated," for the purpose of tolling a governmental tort claim, included the status of being a minor. The court held that it did, because minors are clearly restrained in their ability to provide self-care or to fully manage their own property. It reasoned that the legislature would not have provided tort claims notice protections for incapacitated persons yet intend to leave children unprotected. In Gailey v. Jerome County, 745 P.2d 1051, 1053 (Idaho 1987) the Idaho Supreme Court applied the minor savings statute to the governmental tort claims act because Idaho had a long-standing policy to shelter minor plaintiffs from the insensitive ticking of statutory clocks and failure to apply the tolling statute to notice requirements for such tort claims would be immediate, severe, and incongruous with the policy. In Hunter v. Northern Mason High School, 12 Wash. App. 304, 529 P.2d 898, 899 (1974) reached the same conclusion because legal disabilities of minors were established for the protection of minor, and not as a bar to the enforcement of their rights. In Tafoy v. Doe, 100 N.M. 328, 670 P.2d 582 (N.M. Ct. App. 1983), the New Mexico tort claims act, just like Oklahoma's, only expressly gave a tolling extension for anyone incapacitated "by reason of injury." The court concluded that because being a minor alone is a disability which tolls the general statute of limitations, there was no reason why the minor should not be similarly protected when the alleged wrongdoer is a governmental entity. In Hernandez v. City of Boston, 394 Mass. 45, 474 N.E.2d 166, 168 (Mass. Supreme Judicial Ct.) the court held that because the legislature did not provide for a shortened statute of limitations for minor in the tort claims act, the special statute of limitations for minor operated to toll the limitations period for claims brought under the act. It reached this conclusion because nothing in the act indicated an intent to exclude the minor tolling statute from being applicable to the act.

19 The Okla. Const. Art. 5, §59, see page 2, supra.

20 51 O.S. Supp. 1978 §164, see page 3, supra.

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Criminal Appeals Cases
 CiteNameLevel

 1986 OK CR 86, 721 P.2d 419, ROBINSON v. STATEDiscussed
Oklahoma Court of Civil Appeals Cases
 CiteNameLevel

 1990 OK CIV APP 112, 805 P.2d 692, 62 OBJ 712, State ex rel. Dept. of Human Services on Behalf of Bowens v. PoorDiscussed
 1991 OK CIV APP 118, 832 P.2d 24, 63 OBJ 1959, Mowles By and Through Mowles v. Hillcrest Health CenterDiscussed
 1993 OK CIV APP 158, 862 P.2d 91, 64 OBJ 3379, Brown v. JimersonDiscussed
 2013 OK CIV APP 80, 308 P.3d 1071, LAVENDER v. CRAIG GENERAL HOSPITALDiscussed
 2015 OK CIV APP 43, 348 P.3d 1112, BENTLEY v. KIRKDiscussed
Oklahoma Supreme Court Cases
 CiteNameLevel

 1986 OK 36, 721 P.2d 412, 57 OBJ 1553, Hamilton By and Through Hamilton v. VadenDiscussed at Length
 1987 OK 5, 732 P.2d 470, 58 OBJ 273, Jarvis v. City of StillwaterDiscussed at Length
 1987 OK 61, 743 P.2d 648, 58 OBJ 1982, Estate of Speake, Matter ofDiscussed at Length
 1988 OK 5, 749 P.2d 108, 59 OBJ 325, TWA v. McKinleyDiscussed
 1994 OK 85, 878 P.2d 1045, 65 OBJ 2433, Rout v. Crescent Public Works AuthorityDiscussed at Length
 1994 OK 136, 890 P.2d 1329, 65 OBJ 4037, Anderson v. EichnerDiscussed at Length
 1952 OK 174, 247 P.2d 731, 207 Okla 100, RICHARDS v. FREEMANDiscussed
 1995 OK 31, 894 P.2d 1082, 66 OBJ 1233, Sooner Federal Sav. & Loan Assn. v. SmootDiscussed
 1995 OK 135, 917 P.2d 1, 66 OBJ 3840, Lykins v. Saint Francis Hospital, Inc.Discussed at Length
 1995 OK 143, 910 P.2d 998, 66 OBJ 4005, Cruse v. Board of County Commissioners of Atoka CountyDiscussed at Length
 2004 OK 7, 85 P.3d 841, FANNING v. BROWNDiscussed
 2007 OK 2, 154 P.3d 1250, ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.Discussed
 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.Discussed
 2008 OK 67, 195 P.3d 48, MASQUAT v. DAIMLERCHRYSLER CORP.Discussed
 2011 OK 9, 247 P.3d 1183, WOODS v. PRESTWICK HOUSE, INC.Discussed at Length
 2011 OK 42, 261 P.3d 1122, HAWK WING v. LORTONDiscussed at Length
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELDDiscussed at Length
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INCDiscussed at Length
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATERDiscussed
 1980 OK 67, 611 P.2d 239, Reirdon v. Wilburton Bd. of Ed.Cited
 2016 OK 71, 377 P.3d 124, WATKINS v. CENTRAL STATE GRIFFIN MEMORIAL HOSPITALDiscussed at Length
 2016 OK 100, 382 P.3d 1028, CALVERT v. SWINFORDDiscussed at Length
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITYDiscussed
 2019 OK 39, 457 P.3d 1007, COLE v. JOSEYDiscussed
 2019 OK 84, 455 P.3d 918, VIDEO GAMING TECHNOLOGIES v. TULSA COUNTY BD. OF TAX ROLL CORRECTIONSDiscussed
 1961 OK 283, 370 P.2d 300, SEITZ v. JONESDiscussed
 1982 OK 101, 656 P.2d 248, Johns By and Through Johns v. Wynnewood School Bd. of Educ.Discussed at Length
 1984 OK 43, 683 P.2d 535, Ross v. City of ShawneeDiscussed at Length
 1984 OK 57, 687 P.2d 132, Darnell v. Chrysler Corp.Discussed
Title 12. Civil Procedure
 CiteNameLevel

 12 O.S. 95, Limitation of Other ActionsDiscussed
 12 O.S. 96, Person Under Legal Disability - ExceptionsDiscussed at Length
 12 O.S. 100, Limitation of New Action after Reversal or Failure Otherwise than on MeritsDiscussed
 12 O.S. 940, Negligent or Willful Injury to Property - Attorney's Fees and Costs - Offer and Acceptance of JudgmentDiscussed at Length
 12 O.S. 952, Jurisdiction of Supreme CourtCited
 12 O.S. 2201, Judicial Notice of LawCited
Title 51. Officers
 CiteNameLevel

 51 O.S. 154, Extent of LiabilityDiscussed
 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful DeathDiscussed at Length
 51 O.S. 152, DefinitionsDiscussed at Length
 51 O.S. 152.1, Adoption of Doctrine of Sovereign ImmunityDiscussed
 51 O.S. 153, Liability - Scope - ExemptionDiscussed
 51 O.S. 163, Venue - Parties - Service of Process - Evidence of InsuranceCited
 51 O.S. 164, Application of Oklahoma Laws and Statutes and Rules of ProcedureDiscussed at Length
 51 O.S. 170, Application of LawsCited
Title 58. Probate Procedure
 CiteNameLevel

 58 O.S. 67, Probate Conclusive, WhenCited
Title 76. Torts
 CiteNameLevel

 76 O.S. 18, Limitation of ActionDiscussed at Length

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA